1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10   MAUREEN DERMOTT-MORRISON,

11            Plaintiff,                    NO. CIV. 2:10-2048 KJM-GGH

12        vs.

13   SACRAMENTO EMPLOYMENT            ORDER
     TRAINING AGENCY, *et al.*,
14
              Defendants.
15   _____/

16            This matter is before the court on defendant's motion to dismiss plaintiff's

17   complaint.[1] (ECF 17.) The United States has declined to intervene in this action. (ECF 13.)

18   Plaintiff concedes her claims for violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (C), but

19   retains her retaliation claim. For the reasons set forth herein, defendant's motion is DENIED

20   with respect to plaintiff's retaliation claim.

21   I.       FACTUAL ALLEGATIONS

22            From March 2006 until December 2009, plaintiff was employed by Sacramento

23   Employment Training Agency ("SETA"), which operates two organizations: Head Start of

24   Sacramento County ("Head Start") and Workforce Development. (First Am. Compl. (FAC) ¶¶ 1,

25

26        _____

          [1] This matter was submitted on the papers. *See* E. D. CAL. LOCAL RULE 230(g).

9. ) During the period at issue here, Kathy Kossick was the director of SETA. (FAC ¶ 10.) In
August 2009, Kossick, plaintiff, and several other key staff from SETA met with representatives
from the United States Department of Health and Human Services Administration for Children
and Families ("ACF") to discuss a recently discovered budget shortfall in Head Start for budget
year 2007-2008. (FAC ¶¶ 17, 18.) SETA executives asked whether they could fill the shortfall
with Head Start's 2009-2010 federal grant money. (FAC ¶ 19.)  Jan Len, the manager of ACF,
replied "Absolutely not. You cannot use federal funds from subsequent grants to offset a prior
year closeout shortfall. There are no rollover or carryover options with Head Start funds." (FAC
¶ 18.) Ms. Len closed the meeting by stating "Go home. Find money somewhere in your
community and present a balanced 2007-2008 grant closeout or risk your grant." (*Id.*)

Around September 2009, Kossick told plaintiff that SETA had secured funds from
Workforce Development, which would be used to balance the 2007-2008 Head Start deficit.
(FAC ¶ 20.) At the time, Kossick did not inform plaintiff that Kossick intended to repay the
Workforce Development funds by using funds from the 2009-2010 Head Start budget. (*Id.*) At a
meeting on October 12, 2009, plaintiff learned that Kossick intended to charge inflated and
unincurred expenses against Head Start's 2009-2010 budget and use that money to repay the
Workforce Development fund. (FAC ¶ 21.) Plaintiff objected to Kossick's proposal, arguing that
Ms. Len had expressly told everyone at the August meeting that SETA could not balance the
2007-2008 deficit with money from Head Start's 2009-2010 budget. (*Id.*)

On October 15, 2009, plaintiff met with  Roy Kim, Acting Fiscal Chief for SETA,
to discuss the funding plan. (FAC ¶ 22.) At this meeting, plaintiff again objected to the plan on
the ground that it violated Head Start's funding rules. (*Id.*) Plaintiff told Mr. Kim: "If you can
tell me that you can call and notify Jan Len of what you're doing, and she says fine, then I'm
fine, but you and [Kossick] know what is being done is in violation of Head Start funding rules,
which is why it's being done in secrecy." (*Id.*) She then told Mr. Kim that she "couldn't live
/////

1   with" Kossick's plan. (*Id.*)  At that point, plaintiff began trying to reach an ACF official to report

2   Kossick. (FAC ¶ 23.)

3           On November 30, 2009, plaintiff was called to a meeting with Kossick. (FAC

4   ¶ 24.) After telling plaintiff that Kossick had lost faith in plaintiff's leadership abilities, Kossick

5   requested plaintiff's resignation. (*Id.*) Plaintiff refused to resign, and Kossick informed plaintiff

6   that plaintiff "needed to leave." (*Id.*) Around December 7, 2009, plaintiff received a letter from

7   SETA explaining that plaintiff was "deemed to have resigned [her] position" as of close of

8   business on December 7, 2009. (FAC ¶ 25, Ex. B.)

9   II.    ANALYSIS

10          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

11  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

12  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

13  under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699

14  (9th Cir. 1990).

15          Although a complaint need contain only "a short and plain statement of the claim

16  showing that the pleader is entitled to relief" ( Fed. R. Civ. P. 8(a)(2)), in order to survive a

17  motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to

18  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

19  1937, 1949 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).

20  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a

21  "context-specific task that requires the reviewing court to draw on its judicial experience and

22  common sense." *Iqbal*, 129 S.Ct. at 1950.  Ultimately, the inquiry focuses on the interplay

23  between the factual allegations of the complaint and the dispositive issues of law in the action.

24  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In making this context-specific

25  evaluation, this court must construe the complaint in the light most favorable to the plaintiff and

26  /////

1   accept as true the factual allegations of the complaint.   *Erickson v. Pardus*, 551 U.S. 89, 93-94

2   (2007).

3              Plaintiff claims that her requested resignation constituted retaliation in violation

4   of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). This "whistleblower" provision is

5   intended to protect employees who come forward with evidence that their employers are

6   defrauding the government. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th

7   Cir. 1996).  "A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he

8   or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff

9   engaged in protected activity; and (3) that the employer discriminated against the plaintiff

10  because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Medical Center*,

11  521 F.3d 1097 (9th Cir. 2008). Plaintiff has adequately pled each of the three elements. First,

12  plaintiff avers she was inquiring about actions by SETA that could have led to an FCA claim.

13  *See Hopper*, 91 F.3d at 1269 ("Specific awareness of the FCA is not required. However, the

14  plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable

15  FCA action."); *Moore v. California Institute of Technology Jet Propulsion Laboratory*, 275 F.3d

16  838, 845 (9th Cir. 2002) ("an employee engages in protected activity where (1) the employee in

17  good faith believes, and (2) a reasonable employee in the same or similar circumstances might

18  believe, that the employer is possibly committing fraud against the government."). Second,

19  plaintiff has alleged that she conveyed her unwillingness to abide by SETA's actions to SETA's

20  fiscal chief, and therefore put her employer on notice of her protected activity. *See id.* at 847;

21  *Mendiondo*, 521 F.3d at 1104. Finally, after making SETA aware of her unwillingness to accede

22  to its accounting scheme, plaintiff alleges Kossick told plaintiff she had lost faith in her

23  leadership abilities and requested her resignation. Requesting plaintiff's resignation is sufficient

24  to allege retaliation. *See United States ex rel. Woodruff v. Hawaii Pacific Health*, 560 F. Supp.

25  2d 988, 1005 (D. Haw. 2008) (claim accrued when plaintiff was forced to resign).

26  /////

III.     CONCLUSION

Defendants' motion to dismiss plaintiff's complaint is denied with respect to the retaliation claim. Plaintiff is ordered to submit an amended complaint that omits her conceded claims within fourteen (14) days of this order.

IT IS SO ORDERED.

DATED:  July 5, 2012.

_____
UNITED STATES DISTRICT JUDGE